FILED
 2008 Jan-08  PM 12:12
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALEX KONTOS FRUIT COMPANY, INC., | ) |
| | ) |
| PLAINTIFF, | |
| | ) |
| LEFLEUR BROKERAGE, INC., et al., | ) |
| | |
| INTERVENORS-PLAINTIFFS, | ) |
| | |
| VS. | )         2:02-cv-03215-JHH |
| | |
| ELLIOTT'S PRODUCE, INC.; SANDRA ELLIOTT COLLIER; and BRIAN ELLIOTT, | ) |
| | ) |
| DEFENDANTS. | ) |

## MEMORANDUM OPINION

The court has before it the September 20, 2007 motion (doc. # 148) of the Acting PACA Trustee (the Trustee) for entry of judgment against the Sandra Elliot Collier and Brian Elliot. Pursuant to the court's October 16, 2007 and November 2, 2007 orders, the motion was deemed submitted, without oral argument, on November 27, 2007.

## I. Procedural History

On November 14, 2002, Alex Kontos Fruit Company filed the instant complaint against Elliot's Produce, Inc., alleging violations of the trust provisions of the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. §§ 499a-499s (2002). More specifically, Kontos asserted that it had delivered produce to Elliot's Produce, Inc. during 2002, but that Elliot's Produce, Inc. failed to pay for the produce. On December 17, 2002, the complaint was properly removed to this court.

As the case progressed, it became apparent to all parties that Elloiot's Produce, Inc. owed money to numerous persons and entities in addition to Kontos, and that these persons and entities were protected by the terms of the PACA and its trust provisions. As a result, on February 18, 2003, Kontos moved for the entry of a preliminary injunction against Elliott's Produce, Inc. that required it to escrow its proceeds from produce sales, identify its receivables, inventory its assets, and separate and maintain these produce-related assets as a PACA trust for the benefit of all parties asserting a PACA claim. The parties stipulated to the entry of the preliminary injunction, and the court entered the preliminary injunction on April 2, 2003. (Doc. #22.)

Under the terms of the preliminary injunction order, all parties with valid claims arising under the PACA against Elliot's Produce, Inc. were instructed to intervene in the action or have their claims against Elliot's Produce barred. (Id.) Numerous parties intervened in the lawsuit, all asserting claims against Elliot's Produce. The court appointed counsel for Kontos as the "Acting PACA Trustee" for the purpose of gathering all funds potentially covered by and/or owed to the PACA Trust for the benefit of all parties intervening in the suit with valid claims against Elliot's Produce, Inc., and for the eventual payout of those funds to the claimants of a pro rata basis. (Id.)

On July 31, 2003, the court held a hearing to determine the proper method by which the Trustee should perform its duty to reestablish the PACA Trust. The PACA Trust was to be reestablished by monies from those entities that either owed money to Elliot's Produce, Inc. or had received money from Elliot's Produce, Inc. in breach of the PACA Trust. The court directed the Trustee to reestablish the PACA Trust by filing a separate action against parties owing funds to the PACA Trust in the United States District Court for the Southern District of Alabama. (Doc. # 77.) On October 3, 2003, the Trustee commenced such an action.

The instant motion asserts that the Trustee has diligently pursued all avenues for recovery of any and all assets, other than the individual Elliott defendants. No

3

further assets are available for collection or recovery. Moreover, the action to restore to the PACA Trust monies received from Elliott Produce, Inc. by suppliers, which action was previously filed in U. S. District Court for the Southern District of Alabama, No. 03-0667-CB-L, was dismissed as to all defendants as of April 12, 2006.

Only the Trustee has filed a brief and submitted evidence[1] (doc. #148) in support of its position concerning the pending motion. Although the individual defendants were provided with the opportunity to oppose the motion by order (doc. #152) dated October 16, 2007,[2] no opposition brief or evidence has been filed to date.

While this motion was pending, the plaintiffs and Brian Elliot filed a settlement agreement. (Docs. #155 & 158.) In that agreement, Brian Elliot agreed to pay $30,000.00 to plaintiffs "in full satisfaction of any and all claims Plaintiffs had, have or may have, whether asserted or not, with respect to this action." (Id. ¶

---

[1] The Trustee submitted the following evidence: complaint; preliminary injunction order; August 4, 2003 order in the United States District Court for the Southern District of Alabama; October 3, 2003 complaint in the United States District Court for the Southern District of Alabama; April 12, 2006 order in the United States District Court for the Southern District of Alabama; PACA Trust Chart; affidavit of Stephen Leara; account report as of July 31, 2007; Alabama Secretary of State Annual Reports 2000-2002.

[2] In addition, the court extended the time allowed to respond to the motion. (See doc. #154.)

1.)  The settlement agreement recites a payment plan, with total payment by December 2009.  (Id. ¶¶ 2-3.)  After full payment, the agreement stipulates that "Defendant Brian Elliot shall be completely and finally released and discharged of any liability, claim, or debt that plaintiffs had, have or could have asserted in this action."  (Id. ¶ 4.)  Finally, plaintiffs state that they "shall dismiss Plaintiff [sic] Brian Elliott from this action without prejudice pending the payment of the $30,000.00, and once the full $30,000.00 has been paid, the dismissal shall be amended to be with prejudice."  (Id. ¶ 5.)

On January 3, 2008, the PACA Trustee filed a motion to dismiss Brian Elliot under the terms of the settlement agreement.  (Doc. #160.)  That same day, the court granted the motion to dismiss.  (Doc. #161.)  As such, the only remaining defendants are Elliott's Produce, Inc. and Sandra Elliott Collier.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always

bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  See id. at 323.  Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  See id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears

the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. See Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to

support the non-moving party's case.  See Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[3]

The PACA Trustee represents to the court that the total amount owed to the PACA Trust Beneficiaries is $987,870.16.  The breakdown of this total is as follows:

---

[3] Despite being provided the opportunity to do so, plaintiff has not filed any brief or evidence opposing defendant's motion (doc. #148) for summary judgment.  See supra Section I.  Therefore, the facts as stated herein are the facts as set forth in the evidence presented by the Trustee.  See Astiazarian v. Miami-Dade County, 2005 WL 2456760, No. 04-20585CIVGRAHAM at *2, n.1, citing United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Florida, 363 F.3d 1099, 1103, n.6 (11th Cir. 2004) (stating that the facts as set forth in movant's statement may be deemed admitted to the extent that they are supported by specific references to the record).

| Party | Claim Amount | Valid Amount | If Invalid, Reason Why |
|---|---|---|---|
| Alex Kontos Fruit Co., Inc. | $45,133.25 | $45,133.25 | |
| Bentley Farms | $100,830.00 | $0.00 | Claim disallowed because Bentley Farms failed to preserve under § 499e(c) (doc. #81) |
| Diversified Citrus Marketing | $91,108.00 | $91,108.00 | |
| Fred C. Ebel & Co., Inc. | $45,718.35 | $45,718.35 | |
| Hinton Farms Produce, Inc. | $16,158.00 | $16,158.00 | |
| LeFleur Brokerage, Inc. | $382,633.60 | $382,633.60 | |
| The Mississippi Dept. of Agriculture & Commerce | $11,500.00 | $0.00 | Claim disallowed because no response to objection was filed per 04/02/03 order (doc. #77) |
| Red Star Cabbage, Inc. | $10,859.50 | $10,859.50 | |
| Simon Produce, Inc. | $31,343.00 | $31,343.00 | |
| Sun Pride Produce, Inc. | $252,586.46 | $252,586.46 | |
| **TOTAL** | **$987,870.16** | **$875,540.16** | |

(See Ex. F to Trustee's Motion.)

The Trustee has collected $77,144.62 from Elliot's Produce, Inc. of the total amount owed to the PACA Trust beneficiaries. (See 01/02/08 Account Report, doc. # 159.) Elliot's Produce, Inc. has liquidated all of its assets in response to the court's preliminary injunction order. (See doc. #22.)

### IV. Applicable Substantive Law and Analysis

The Eleventh Circuit has never decided whether an individual corporate officer can be held liable for breaching his or her fiduciary duty to protect PACA trust assets. Four other circuit courts have considered this issue, however, and all have concluded that individual liability does exist in certain circumstances. See Weis-Buy Services, Inc. v. Paglia, 411 F.3d 415, 420-21 (3rd Cir. 2005); Patterson Frozen Foods v. Crown Foods Int'l, 307 F.3d 666, 669 (7th Cir. 2002); Golman-Hayden Co. v. Fresh Source Produce Inc., 217 F.3d 348, 351 (5th Cir. 2000); Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 283 (9th Cir. 1997).

In Sunkist Growers,, the Ninth Circuit examined the decisions of several district courts and concluded that "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under

the Act." 104 F.3d at 283.  In Golman-Hayden, the Fifth Circuit expressed its agreement with Sunkist Growers and further explained:

> PACA is a "tough law." In addition to protecting consumers, Congress expressly designed it to protect the producers of perishable agricultural products, most of whom must entrust their products to a buyer who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing. An investor in a perishable commodities corporation "should know at the beginning of his association with such a corporation that he is 'buying into' a corporation which is strictly regulated by the federal government through PACA."

217 F.3d 348, 351 (internal citations and footnotes omitted).

Individual liability in the PACA context is not derived from the statutory language, but from common law breach of trust principles.  Sunkist Growers, 104 F.3d at 282.   "Under the common law, the trustee of a trust is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property."  Shepard v. K.B. Fruit & Vegetable, 868 F.Supp. 703, 706 (E.D. Pa. 1994). Liability arising from this duty is distinct from the liability that arises when the corporate veil is pierced:

> An individual who is in the position to control the [PACA] trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act. This legal framework is to be distinguished from the piercing the veil doctrine, where the corporate form is disregarded because the individual has

11

> either committed a fraud, or because the corporation is a "shell" being used by the individual shareholders to advance their own purely personal rather than corporate ends.

Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F.Supp. 346, 348 (S.D.N.Y. 1993).

Despite the opportunity to do so, Sandra Elliot Collier has not opposed the imposition of personal liability under PACA. This court sees no reason why it should not follow the direction of all the circuit courts who have considered the issue. As such, as President of Elliot's Produce, Inc. (see Ex. I to Trustee's motion), the court finds that Sandra Elliot Collier was in a position to control the PACA Trust assets and breached her duty to preserve those assets. Because Elliot's Produce, Inc. has liquidated all its assets and is unable to satisfy the remainder of the payments owed to the PACA Trust, the court finds that Sandra Elliot Collier is personally liable for the remaining payments owed to the PACA Trust.[4]

The allowed PACA claims in this case result in a sum of $875,540.16 owed to the trust.[5] The Acting PACA Trustee has collected $77,144.62 of this

---

[4] The court does not include Brian Elliot in this determination per the settlement agreement. See supra Section I.

[5] Although the PACA Trustee represented to the court in its motion that the Trust was owed $987,870.16, that total includes two claims disallowed by the court. (See docs. # 77 & 81.)

12

outstanding balance, according to the account report filed with the court on January 2, 2008.  (Doc. #159.)  In addition, the PACA Trustee settled with Brian Collier in the amount of $30,000.00.  As such, because no other assets are available for recovery or collection, the court finds that Sandra Elliot Collier is responsible under PACA for the remainder of the amount owed, or $ 768,395.54.

## V. Conclusion

In summary, the court finds that no material issues of fact remain and that the Acting PACA Trustee is entitled to judgment as a matter of law against Sandra Elliot Collier in the amount of $768,395.54.

The court also has before it the PACA Trustee's motion (doc. #162) for reimbursement of costs.  This motion is due to be granted.  The court concludes that the items contained in the motion, and sworn to by the attached affidavit, were necessary to administer this case, as directed by the court in its April 2, 2003 order. (Doc. # 22.)  As such, the Trustee is due to be reimbursed from the PACA Trust funds in the amount of $37,883.03.  The remaining funds in the trust are due to be distributed pro rata to the PACA trust beneficiaries listed in the PACA Trust chart, and the PACA Trust will be so authorized.

A separate final judgment will be entered.  But before closing the court's oldest active case, the court acknowledges the outstanding work performed by the

Acting PACA Trustee. The court recognizes the great time and effort expended by the Trustee and is grateful for the Trustee's diligence.

    **DONE** this the ___8th___ day of January, 2008.

                                 */s/ James H. Hancock*
                                 SENIOR UNITED STATES DISTRICT JUDGE